JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JULIE WITHERSPOON<br>            Petitioner,<br><br>     vs.<br><br>ORANGE COUNTY DEPT. OF<br>SOCIAL SERVICES, DANNY<br>WITHERSPOON<br>            Respondents. | Case No.: SACV 09-00302-CJC(ANx)<br><br><br><br><br>ORDER DISMISSING CASE BASED<br>ON YOUNGER ABSTENTION |

## I.      INTRODUCTION

This matter arises from a dispute over the custody of two minors, J.W. and D.W. (the "Minors").  In July, 2006, German and United States Army authorities removed the Minors from Petitioner Julie Witherspoon's custody while Ms. Witherspoon was stationed in Germany.  The Minors' father, Respondent Danny Witherspoon, came to Germany at the authorities' request and took the Minors back to the United States, where he began divorce and custody proceedings in state court in Orange County.  Ms.

Witherspoon also returned to the United States, where she filed a petition in California state court under the Hague Convention and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 et seq., to have the Minors returned to Germany. The California Court of Appeal stayed this proceeding when the state juvenile court initiated a dependency proceeding, giving the state custody of the Minors to protect them from harm.  Ms. Witherspoon now files a petition in the United States District Court under Hague Convention and ICARA, seeking the same relief she previously sought— and has not yet obtained—from the state court.  This action is now DISMISSED under the *Younger* abstention doctrine.

## II.    BACKGROUND

Ms. Witherspoon, a soldier in the United States Army stationed in Germany, had custody of the Minors in July, 2006.  The Minors were hospitalized with stomach problems.  The attending physician at the hospital in Germany refused to release the Minors to Ms. Witherspoon, because her behavior was allegedly extremely intoxicated, hostile, and bizarre.  At the time, Ms. Witherspoon allegedly threatened to harm herself and the Minors.  Consequently, the Army and the German Youth Welfare Office took custody of the Minors.  Ms. Witherspoon was involuntarily committed.  The Army and the German Youth Welfare Office summoned Mr. Witherspoon to Germany to take custody of the Minors.  Mr. Witherspoon did so—at the behest of Germany and the Army—and brought the Minors back to Orange County in California.

Shortly thereafter, both Mr. Witherspoon and Ms. Witherspoon took legal actions seeking to assert their custody of the Minors.  Mr. Witherspoon brought a divorce case in state court and sought custody of the minors.  Ms. Witherspoon filed a petition under the Hague Convention and ICARA in that case, seeking to have the Minors released to her and sent back to Germany for further custody proceedings.  Eventually, the juvenile court

conducted dependency proceedings and the state took custody of the Minors, first placing them in a shelter and then placing them in foster care.

In August, 2006, Mr. Witherspoon filed an action in state court seeking divorce and sole custody of the Minors.  On October 20, 2006, Ms. Witherspoon filed a petition in state court for an order to show cause why the Minors should not be sent back to Germany under the Hague Convention and ICARA.  To support her petition, Ms. Witherspoon alleged that Mr. Witherspoon was sexually active with high school students[1] and was physically abusive.  Mr. Witherspoon denied those allegations.  The state court found that the Minors' habitual residence was in Germany, where they lived and attended school for the previous four years.  The state court found that "by unilaterally removing the children from Germany and bringing them to the United States, Father did breach German authority."  Accordingly, the state court found that the Minors should return with Ms. Witherspoon to Germany.

Mr. Witherspoon appealed the state court's decision granting Ms. Witherspoon's ICARA petition.  The California Court of Appeal for the Fourth District found that the state court erred when it granted Ms. Witherspoon's ICARA petition because it failed to take several factors into account.  *In re the Marriage of Witherspoon*, 155 Cal. App. 4th 963 (Cal. Ct. App. 2007).  Specifically, the Court of Appeal found that the state court should have made findings as to whether there was "a grave risk that [the minors'] return [to Germany] would expose [them] to physical or psychological harm or otherwise place [them] in an intolerable situation."  *Witherspoon*, 155 Cal. App. 4th at 974.  The Court of Appeal also found that the state court should have taken Ms. Witherspoon's alleged consent to the Minors' move and the Minors' own wishes into account when evaluating Ms. Witherspoon's ICARA petition.  *Id.* at 975-76.  The Court of Appeal further

---

[1] Mr. Witherspoon began his relationship with Ms. Witherspoon when he was a teacher and she was his student.  He was 30 years her senior at the time.

determined that it was an abuse of discretion for the state court to award emergency custody to Ms. Witherspoon without considering whether the award of custody would place the children at risk of harm.  *Id.* at 976.  The Court of Appeal remanded the case to state court to make determinations on these issues, but ruled that "any further superior court proceedings" on remand on the matter had to await the conclusion of the a juvenile court dependency action.  *Id.*

In December 2007 the juvenile court declared the Minors to be dependants of the state and adopted a plan for both parents that included therapy and classes.  *In re D.W. et al*, G0398457 and G040159, 2008 WL 5423586 at *6 (Cal. Ct. App., Dec. 31, 2008). The juvenile court also required Ms. Witherspoon to submit to drug tests and substance abuse treatment.  *Id.*  Ms. Witherspoon appealed that decision as well, arguing that the state court's original order on her state ICARA petition precluded any further jurisdiction over custody, even though the first ruling in the Hague Action was overturned by the Court of Appeal.  *Id.* at *9.  The Court of Appeal held that the juvenile court properly communicated with the court in Germany, who "indicated its lack of interest in the case and its belief that California was the more appropriate jurisdiction."  *Id.*  The Court of Appeal then held that "[u]nder the unique facts presented by this case, the juvenile court was correct to protect the children while the validity of the state court order [in the Hague action] was under appeal."  *Id.* at *10.

The Court of Appeal confirmed that the juvenile court's assertion of emergency jurisdiction was proper, especially in light of Ms. Witherspoon's behavior.  *Id.* at *8-*9. The Court of Appeal found that Ms. Witherspoon's behavior was "often disruptive, hostile, and unpredictable," and left the minors "emotional and in tears."  *Id.* at *5.  The Court of Appeal found that at one point, Ms. Witherspoon called a visitation monitor a "fucking Nazi."  *Id.*  The Court of Appeal relied on the juvenile court's finding that Ms. Witherspoon suffered from a borderline personality disorder, which is "the source of her

erratic behavior, impulsivity, suicidal threats, threats of violence, her inability to control her anger, and her transient paranoid symptoms." *Id.*

Subsequently, the juvenile court, in dependency proceedings, first removed the Minors to a shelter, and then placed them into foster care.  The Minors are now under the care of their father, but the Juvenile Court continues to supervise them as the dependency proceeding is ongoing.  Ms. Witherspoon now brings the current petition in federal district court under the Hague Convention and the convention's federal statutory corollary, ICARA, seeking the immediate return of the Minors to her custody in Germany.

## III.   ANALYSIS

The Ninth Circuit has held that "[b]ecause the federal courts' obligation to adjudicate claims within their jurisdiction is virtually unflagging, abstention is permissible only in a few carefully defined situations with set requirements." *U.S. v. Morros*, 268 F.3d 695, 703 (9th Cir. 2001) (quotations omitted).  "Whether it is labeled comity, federalism, or some other term, the policy objective behind *Younger* abstention is to avoid unnecessary conflict between state and federal governments." *Id.* at 707 (quotations omitted).  The *Younger* doctrine, named after the United States Supreme Court case *Younger v. Harris*, requires federal courts to abstain from intervening in pending state judicial proceedings when (1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) the state proceedings provide the plaintiff with an adequate opportunity to raise federal claims.  401 U.S. 37, 39-53 (1971).

The three abstention elements are present in this case.  First, Ms. Witherspoon's Hague Petition is still pending in state court.  Ms. Witherspoon filed her petition in state

court.  The state court granted her petition.  The Court of Appeal overturned that ruling, and ordered that emergency juvenile court dependency proceedings go forward.  That proceeding, and the state's custody of the Minors, is ongoing.  Once the juvenile court's dependency proceeding concludes, the state court will finish adjudicating Ms. Witherspoon's ICARA petition.

Second, these proceedings implicate important state interests.  This case concerns domestic relations, conflicts between fathers and mothers, and the state's role ensuring the health and welfare of the Minors.  The Ninth Circuit has held that "the realm of domestic relations is and has been traditionally governed by state law."  *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (1987) (holding that *Younger* abstention was permissible in cases dealing with the domestic realm).  States allocate considerable resources to family and juvenile courts so they can effectively navigate these often troubled waters.  State courts have access to child welfare and social workers, and available foster parents and shelters.  Federalism gives states authority over matters of marriage, family, and child welfare.  This case deals with those interests.

Third, the state proceeding gives Ms. Witherspoon an adequate opportunity to raise the issues she seeks to raise here in federal court.  Ms. Witherspoon's petition has already received process from the state court at the trial and appellate levels, and it is still pending.  The state court has jurisdiction to hear Ms. Witherspoon's petition as ICARA and the Hague Convention grant concurrent jurisdiction to state and federal courts. Indeed, the Ninth Circuit has recognized that courts must give full faith and credit "to the judgments of those state or federal courts that actually adjudicated a Hague Convention." *See, e.g., Holder v. Holder*, 305 F.3d 854, 864 (9th Cir. 2002).

A district court in the Ninth Circuit has held that *Younger* abstention is appropriate in ICARA cases when these three elements are satisfied.  *See Cerit v. Cerit*, 188

F.Supp.2d 1239 (D. Haw. 2002).  In *Cerit*, a district court in Hawaii ruled that it was appropriate to abstain from ruling on a Turkish man's ICARA petition when he had already made an ICARA argument in Hawaii state court.  The petitioner argued—in a motion to dismiss a child custody case in Hawaii state court—that his children should be immediately returned to his home in Turkey pursuant to ICARA.  *Id.* at 1242.  The state court in Hawaii denied the ICARA motion and issued a temporary restraining order keeping the petitioner's children in Hawaii.  *Id.* at 1243.  The petitioner then filed an ICARA petition in federal court in Hawaii arguing for his children's immediate return to Turkey.  *Id.*

The district court in *Cerit* held that the state court was still in the process of determining the central issues related to the petitioner's Hague Convention arguments. *Id.* at 1246.  The petitioner argued that the state court's actions related to his ICARA claims were inadequate, so it would be appropriate for the federal court to consider his petition.  *Id.*  The district court rejected that argument, holding that it was appropriate for the district court to abstain while the state court finished its proceeding:

> Moreover, even if the [state court] proceeding were inadequate, the fact remains that Petitioner filed an ICARA petition in state court and the issues central to such a petition were lengthy addressed by the court. If Petitioner found any ruling "inadequate," Petitioner should have availed himself of his various remedies, including, for example, filing a motion for clarification, a motion for reconsideration, or an appeal.  Petitioner cannot now expect the federal court to entertain a petition raised in state court simply because he feels the state court's ruling was "inadequate."

*Id.*  Therefore, "despite the fact that abstention is the exception and not the rule, if the requirements of the Younger [doctrine is] met, the Court must abstain from hearing the

ICARA petition, as have numerous other courts." *Id.* at 1246-7. *See also Grieve v. Tamerin,* 00-3824, 2000 WL 1240199 (E.D.N.Y. Aug. 25, 2000) (holding that *Younger* abstention was appropriate where the petitioner had filed a Hague Convention petition in state court previous to filing it in federal court).

Other federal courts have found *Younger* abstention inapplicable to ICARA petition cases when petitioners did not bring ICARA arguments in previous state court cases.  For example, in *Gaudin v. Remis,* the Ninth Circuit held that abstention in ICARA petition cases is inappropriate when the ICARA petition was not originally brought in state, even if a state has ongoing custody proceedings. 415 F.3d 1028, 1035 (9th Cir. 2005).  In *Gaudin,* the petitioner "did not bring her ICARA claim before the Hawaii courts; instead, she chose to exercise her right to seek relief under ICARA in federal court while simultaneously pursuing other remedies in state court." *Id.* at 1034. Similarly, in *Holder v. Holder,* the Ninth Circuit held that "[b]ecause [the petitioner] did not bring a Hague Convention claim in his state court custody proceeding, this case is distinguishable from cases in which other courts have stayed proceedings under *Colorado River* or otherwise abstained pending the outcome of proceedings in state court."  305 F.3d 854, 869 (9th Cir. 2002).  This implies that *Younger* abstention is applicable when— as in this case—a petitioner brought a Hague Convention petition in state court.

Two factors in the present case distinguish it from holdings that *Younger* abstention cannot be applied to ICARA petitions.  First the state court has been litigating the ICARA issue since Ms. Witherspoon chose to raise it there.  The state court heard and initially granted her petition.  The Court of Appeal reversed that decision.  When the juvenile court took custody of the Minors, in the dependency proceeding, Ms. Witherspoon appealed that decision, arguing that ICARA barred state court jurisdiction in the dependency matter.  The Court of Appeal again considered the ICARA question, and rejected Ms. Witherspoon's arguments.  Unlike the petitioners held immune to *Younger*

abstention by the Ninth Circuit, Ms. Witherspoon has been litigating her ICARA petition in state court, and will continue to do so.  Increasing this Court's involvement would interfere with the state court's ability to finish a matter that it has already undertaken at Ms. Witherspoon's behest.

Second, the present case is special because the juvenile court proceedings that have delayed the ICARA proceedings are not custody proceedings, but dependency proceedings.  The purpose of custody proceedings is to determine which parent, or private party, should retain custody of children.  In contrast, a juvenile court initiates dependency proceedings to determine if the state—not private individuals—should have custody of children to shield them from harm.  In this case, the juvenile court initially determined that neither Mr. Witherspoon nor Ms. Witherspoon were fit parents, and granted custody of the Minors to the state.  Since then, the juvenile court has retained custody of the Minors, first placing them in a shelter, then placing them in foster care, and then placing the minors with Mr. Witherspoon, while continuing to supervise the Minors' well being.  Contrary to Ms. Witherspoon's assertions, Mr. Witherspoon does not have sole custody of the Minors.  The state continues to supervise the Minors.  This undercuts Ms. Witherspoon's argument that this federal court should use ICARA to disrupt the state proceedings.  ICARA states that "[p]ersons should not be permitted to *obtain custody* of children by virtue of their wrongful removal or retention." 42 U.S.C. § 11601 (emphasis added).  The proceedings thus far have not been about custody.  They have been about protecting the welfare of the Minors.  It would be inappropriate for a federal court to interfere with the state's duty in this area.

**IV.   CONCLUSION**

For the foregoing reasons, Respondent's motion to dismiss is GRANTED.[2]

DATED: August 10, 2009

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[2] A cursory examination of Ms. Witherspoon's ICARA petition reveals at least two other problems with her petition.  First, the Hague Convention requires that petitions be filed before "a period of less than one year has elapsed from the date of the wrongful removal or retention."  Hague Convention Art. 12, 42 U.S.C. § 11603(e)(2)(b).  Since more than two years elapsed between the Minors' removal from Germany and the filing of this action, the petition might very well be barred by the statute of limitations. Second, Ms. Witherspoon's ICARA petition appears moot because she likely is not domiciled in Germany, but is rather domiciled in the United States.  "[W]hen a petitioner relocates permanently to the same country in which the abductor and the children are found, she casts her lot with the judicial system of that country."  *Von Kennel Gaudin v. Remis*, 282 F.3d 1178, 1183 (9th Cir. 2002).